Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms the Opinion and Award of the deputy commissioner, but modifies the opinion to delete any reference to Dr. Botwright's records, which were not admitted into evidence.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with GAB Robins North America, Inc., as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The issues for determination are:
 a. Whether plaintiff sustained an injury by accident or has contracted a compensable occupational disease, and if so, to what benefits may she be entitled under the Act.
 b. Whether plaintiff gave defendant notice of the alleged injury or disease.
 c. Whether plaintiff's right arm condition is causally related to the alleged accident or disease.
5. The parties stipulated the following exhibits into the record:
a. Functional capacity evaluation — three pages,
b. Records of Dr. DeFranzo — nine pages.
6. Plaintiff's average weekly wage was $438.67 which yields a compensation rate of $292.46, based upon the Form 22 Statement of Days Worked and Earnings of Injured Employee.
7. Plaintiff received short-term disability benefits in the amount of $520.83 for the period from 29 February 1996 through 17 March 1996. In the event that plaintiff's claim is found to be compensable, defendant shall be entitled to a credit for these benefits.
***********
Based on the credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a forty-six year old right hand dominant female. On 7 June 1987, plaintiff was employed by defendant in the grip finishing department.
2. Plaintiff's duties as a grip finisher included sanding and buffing golf grips with a saw blade which was taped to a handle. On average, plaintiff spent five minutes buffing or sanding each golf grip.
3. In 1988, plaintiff was assigned to the paint department. Plaintiff's duties involved applying paint to the grooves of the golf grips by using a syringe-type instrument with a needle. Plaintiff traced marked grooves on the grips, and exerted the same type of pressure as that required to use an ink pen.
4. During the course of a workday, plaintiff painted several different patterns on golf grips. Plaintiff also sorted and packed grips twice a week for two to three hours at a time. Plaintiff loaded her cart with boxes of grips at the start of each shift. Plaintiff stopped painting to retrieve boxes of grips from the cart every thirty minutes. During the last ten to fifteen minutes of each shift, plaintiff cleaned her work area. On putter grips, plaintiff painted only a small area on the front of the grip, while other grips required extensive painting up and down the entire grip.
5. Plaintiff received one ten minute break and a fifteen minute lunch period over the eight-hour work day.
6. Plaintiff's job with defendant did not require repetitive flexion or extension of her hands, nor did it require repetitive twisting and turning of the wrists and hands. Rather, plaintiff's job required precise, fluid hand movements to accurately apply paint to the grips.
7. On 12 September 1989, plaintiff sought treatment from James Currin, M.D. At that visit, plaintiff reported to Dr. Currin that she had right arm pain for one year. Dr. Currin diagnosed plaintiff with tendonitis.
8. On 8 March 1996, Dr. Currin referred plaintiff to Ralph Carter, M.D., an orthopedic surgeon. Dr. Currin diagnosed plaintiff with synovitis and prescribed anti-inflammatory medication. On plaintiff's last visit with Dr. Currin on 26 June 1996, plaintiff was diagnosed with chronic tendonitis.
9. Dr. Currin found plaintiff had reached maximum medical improvement on 25 June 1996.
10. Plaintiff began treatment with Dr. Carter on 8 March 1996, at which time plaintiff was diagnosed with chronic right lateral epicondylitis. Plaintiff was referred to six physical therapy sessions to strengthen her right forearm.
11. On 16 March 1996, Dr. Carter noted that plaintiff had not done the therapy in earnest, as she had attended only one therapy session.
12. On 31 March 1996, Dr. Carter found that plaintiff reached maximum medical improvement and that she retained no permanent partial impairment.
13. On 28 August 1996, plaintiff returned to Dr. Carter and was diagnosed with deQuervain's disease. Plaintiff received a cortisone injection and a wrist splint.
14. Plaintiff was due to return to work on 4 April 1996 after a leave of absence. When plaintiff had not returned to work on 12 April 1996, defendant's personnel director sent plaintiff a certified letter, return receipt required. The certified letter informed plaintiff that because she failed to provide any further documentation to support a continued leave of absence, plaintiff would be considered to have voluntarily resigned effective 5 April 1996.
15. On 9 June 1997, plaintiff was seen by Anthony DeFranzo, M.D., an orthopedic surgeon. Dr. DeFranzo diagnosed plaintiff with right carpal tunnel syndrome, right lateral epicondylitis, and right deQuervain's disease, for which release surgery was performed in October 1997.
16. Dr. DeFranzo found that plaintiff reached maximum medical improvement on 7 April 1998 and that plaintiff retained a ten percent permanent partial impairment to the right arm.
17. On 1 April 1998, plaintiff underwent a functional capacity evaluation (FCE). The evaluator noted that plaintiff gave a very poor effort for reasons other than pain.
18. Plaintiff testified before the deputy commissioner that she completed 2,000 to 2,500 golf grips per shift. However, there were breaks, interruptions, and other duties which plaintiff performed over the course of her eight hour shift. Plaintiff exaggerated her level of performance at work, and her testimony regarding the amount of golf grips she completed during her shift is not credible.
19. To the extent that Dr. Carter, Dr. Currin, and Dr. DeFranzo found plaintiff's condition to be causally related to her job with defendant, their opinions are not persuasive because they assumed facts not supported by the credible evidence regarding plaintiff's job duties and hand movements.
20. Dr. DeFranzo further based his opinions on plaintiff's inaccurate description of the flexion, extension, twisting, and turning of her wrists on the job. Dr. DeFranzo also incorrectly understood that plaintiff was still sanding and fixing grips, a job which plaintiff had not performed since 1988.
21. The greater weight of the evidence fails to show that plaintiff's right carpal tunnel syndrome, right lateral epicondylitis, or right deQuervain's disease were caused or signficantly contributed to by her employment with defendant or that plaintiff's job placed her at an increased risk for contracting her conditions as compared to members of the general public not so employed.
22. There is no competent, credible medical evidence in the record to support a finding that the diseases which plaintiff contracted were characteristic of and peculiar to her employment.
23. There is no competent evidence to support that plaintiff sustained an injury by accident on or about 13 February 1996.
24. When plaintiff applied for short-term disability on or about 14 March 1996, she completed the form to reflect that her condition was not work-related.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff failed to prove that her right carpal tunnel syndrome, right lateral epicondylitis, or right deQuervain's disease were characteristic of and peculiar to her employment with defendant and that her employment with defendant caused or significantly contributed to the development of her conditions. Accordingly, plaintiff did not sustain an occupational disease under the Act. G.S. 97-53(13).
2. Plaintiff did not sustain an injury by accident on or about 13 February 1996. G.S. 97-2(6).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation under the Act is DENIED.
2. Each side shall pay its own costs. Defendant shall pay the expert witness fee of $200.00 to Dr. Carter and $160.00 to Dr. Currin.
3. Plaintiff shall pay the expert witness fee of $240.00 to Dr. DeFranzo.
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ LAURA K. MAVRETIC COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER